FILMAR RACING, INC., Plaintiff v. DONALD W. STEWART, STEWART & SMITH, P.C., and GILFORD H. MARTIN, II, Defendants

No. COA99-1507

(Filed 2 January 2001)

**1. Jurisdiction— personal—long arm**

The trial court did not err by granting a motion to dismiss for lack of personal jurisdiction pursuant to N.C.G.S. § 1A-1, Rule 12(b)(2) by an Alabama attorney and his law firm where plaintiff was a Tennessee corporation which brought an action against Martin (a North Carolina resident), Stewart (the Alabama attorney), and Stewart's law firm arising from plaintiff's contract to purchase Pinnacle Motorsports Group, a letter from Stewart to Pinnacle informing Pinnacle of the status of Tennessee litigation, and Pinnacle's refusal to go forward with the sale. The only contact between Stewart, his law firm, and North Carolina is the mailing of a single letter from Alabama written by Stewart on Stewart & Smith letterhead on behalf of his client; North Carolina's interest in adjudicating the matter is insignificant; the litigation giving rise to this action has been pending in Tennessee at all relevant times; and permitting this lawsuit to proceed would not be convenient for the parties or in the interests of fairness to Stewart and his firm. The necessary minimum contacts do not exist.

**2. Contracts— tortious interference—failure to state claim— non-malicious motive**

The trial court did not err by granting a Rule 12(b)(6) motion to dismiss plaintiff's claims against all defendants in an action for tortious interference with contract arising from the proposed sale

**FILMAR RACING, INC. v. STEWART**

[141 N.C. App. 668 (2001)]

of a North Carolina business to plaintiff which did not take place after defendants informed the business of the status of litigation in Tennessee. The complaint described the litigation in Tennessee between defendant-Martin and plaintiff so that, on the face of the complaint, plaintiff alleged that defendants have a legitimate business interest and a motive for interference other than malice.

Appeal by plaintiff from judgment entered 20 September 1999 by Judge William Freeman in Cabarrus County Superior Court. Heard in the Court of Appeals 6 November 2000.

*Cozen and O'Connor, by Paul A. Reichs, Hunter Quick and Anna Daly, for plaintiff-appellant.*

*Hartsell, Hartsell & White, P.A., by Fletcher L. Hartsell, Jr. and Kimberly A. Lyda, for defendant-appellees.*

EAGLES, Chief Judge.

On 28 January 1999, Filmar Racing, Inc. (Filmar) brought an action against Donald W. Stewart (Stewart), Stewart & Smith, P.C. (Stewart & Smith) and Gilford H. Martin II (Martin) alleging tortious interference with a contract. On 30 March 1999 a motion to dismiss was filed by Stewart, Stewart & Smith and Martin. On 20 September 1999, Judge William Freeman dismissed all claims as to all defendants. Filmar appeals.

Filmar is a Tennessee corporation which until about 11 January 1999 maintained a place of business in Concord, North Carolina. Martin is a North Carolina resident and minority shareholder in Filmar. Stewart is a resident of Alabama licensed to practice law in that state. He is a principal in Stewart & Smith, P.C., a law firm organized as a professional corporation for the practice of law in Alabama.

This appeal arises from a Tennessee lawsuit instituted by Martin against Filmar. The Tennessee litigation was pending at all times relevant to this appeal. According to the appellees' brief, in the Tennessee litigation, Martin, represented by Stewart, sued Filmar Racing, Inc. as a minority shareholder, a creditor and an employee of Filmar.

Prior to 11 January 1999, Filmar entered into a contract with Pinnacle Motorsports Group (Pinnacle) of Concord, North Carolina.

According to the terms of the contract Filmar agreed to sell substantially all of its corporate assets to Pinnacle for approximately $1,350,000.00. Shortly thereafter, Stewart, on behalf of Martin, filed a request for injunctive relief asking the Tennessee court to sequester any funds received by Filmar from the sale of assets to Pinnacle pending the outcome of the Tennessee litigation. The Tennessee court denied the request following a hearing on 15 January 1999. On 20 January 1999, Stewart, on behalf of Martin, then moved the court for reconsideration of its order.

On 25 January 1999, before the Tennessee court ruled on Stewart's motion to reconsider, Stewart mailed a letter from Alabama to Pinnacle in Concord, North Carolina. In the letter Stewart informed Pinnacle about the status of the Tennessee litigation, including the pendency of the motion to reconsider. The letter also provided in pertinent part that

> upon a sale of the corporate assets and distribution of the sale proceeds, Mr. Martin will hold Pinnacle Motorsports Group liable for his lawful share of the corporate assets. If [the majority shareholder in Filmar] distributes the sale proceeds to creditors . . . then Mr. Martin will be forced to seek recourse against Pinnacle Motorsports Group . . . We suggest that Pinnacle not transfer any funds to [the majority shareholder] or Filmar Racing, Inc. until the Motion to Reconsider is heard and decided . . . .

After receiving this letter, Pinnacle refused to go forward with the assets sale pursuant to their contract with Filmar. As a result, on 28 January 1999, Filmar filed this lawsuit in Cabarrus County Superior Court alleging tortious inference with a contract. On 30 March 1999, Stewart, Stewart & Smith and Martin filed a motion to dismiss under the provisions of Rule 12(b) of the North Carolina Rules of Civil Procedure. On 20 September 1999, Judge William Freeman granted the motion to dismiss as to defendants Stewart and Stewart & Smith pursuant to Rules 12(b)(2)(4) and (5), and as to defendants Stewart, Stewart & Smith and Martin pursuant to Rule 12(b)(6). From this order and judgment of dismissal, Filmar appeals.

**[1]** By their first assignment of error, Filmar contends that the trial court erred in granting Stewart and Stewart & Smith's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Rules of Civil Procedure. Filmar argues that the exercise of personal jurisdiction here is statutorily and constitutionally permissible. We disagree.

**FILMAR RACING, INC. v. STEWART**

[141 N.C. App. 668 (2001)]

The determination of whether the trial court can properly exercise personal jurisdiction over a non-resident defendant is a two-part inquiry. *Godwin v. Walls*, 118 N.C. App. 341, 345, 455 S.E.2d 473, 478 (1995); *Murphy v. Glafenhein*, 110 N.C. App. 830, 833, 431 S.E.2d 241, 243 (1993); *Cherry Bekaert & Holland v. Brown*, 99 N.C. App. 626, 629, 394 S.E.2d 651, 654 (1990). First, the North Carolina long-arm statute must permit the exercise of personal jurisdiction. *Godwin*, 118 N.C. App. at 345, 455 S.E.2d at 478. Second, the exercise of personal jurisdiction must comport with the due process clause of the Fourteenth Amendment of the United States Constitution. *Id.* However, "[w]hen personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry—whether defendant has the minimum contacts necessary to meet the requirements of due process." *Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 27, 519 S.E.2d 317, 320 (1999). The burden is on the plaintiff to prove by a preponderance of the evidence that grounds exist for the exercise of personal jurisdiction over a defendant. *Murphy*, 110 N.C. App. at 834, 431 S.E.2d at 243.

Filmar argues that the North Carolina long-arm statute, G.S. § 1-75.4, confers jurisdiction over Stewart and Stewart & Smith. The statute provides in pertinent part that jurisdiction is proper "[i]n any action claiming injury to person or property or for wrongful death within or without this State arising out of an act or omission within this State by the defendant." G.S. § 1-75.4(3) (1999). Assuming *arguendo* that Stewart and Stewart & Smith were subject to the long-arm statute, the exercise of personal jurisdiction over them by the North Carolina courts would violate due process.

The Due Process Clause of the Fourteenth Amendment operates as a limitation on the power of a state to exercise *in personam* jurisdiction over a non-resident defendant. *Hiwassee*, 135 N.C. App. at 28, 519 S.E.2d at 320. In determining whether the exercise of personal jurisdiction comports with due process, the crucial inquiry is whether the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L.Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L.Ed. 278, 283 (1940)). To generate minimum contacts, the defendant must have acted in such a way so as to purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the laws of North Carolina. *Id.* at 319, 90 L.Ed. at 104;

*Buying Group, Inc. v. Coleman,* 296 N.C. 510, 515, 251 S.E.2d 610, 614 (1979); *Hiwassee,* 135 N.C. App. at 28, 519 S.E.2d at 320-21; *Godwin,* 118 N.C. App. at 353, 455 S.E.2d at 482. Moreover, the relationship between the defendant and the state must be such that the defendant should "reasonably anticipate being haled into" a North Carolina court. *Cherry Bekaert,* 99 N.C. App. at 632, 394 S.E.2d at 656. Whether a defendant's activities satisfy due process depends upon the facts of each case. *Perkins v. Benguet Consol. Min. Co.,* 342 U.S. 437, 445, 96 L.Ed. 485, 492 (1952).

Our courts have developed a list of factors helpful to determining the existence of minimum contacts. Such factors include, "(1) the quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience of the parties." *Cherry Bekaert,* 99 N.C. App. at 632, 394 S.E.2d at 655 (quoting *New Bern Pool & Supply Co. v. Graubart,* 94 N.C. App. 619, 624, 381 S.E.2d 156, 159, *aff'd per curium,* 326 N.C. 480, 390 S.E.2d 137 (1990); *Tutterrow v. Leach,* 107 N.C. App. 703, 708, 421 S.E.2d 816, 819 (1992). The Court must also weigh and consider the interests of and fairness to the parties involved in the litigation. *Tutterrow,* 107 N.C. App. at 708, 421 S.E.2d at 819.

Absent a request by a party, a trial court is not required to make findings of fact when ruling on a motion. *Cameron-Brown Co. v. Daves,* 83 N.C. App. 281, 285, 350 S.E.2d 111, 114 (1986). Rather, on appeal it is presumed that the trial court found facts sufficient to support its ruling. *Id.* If these presumed factual findings are supported by competent evidence, they are conclusive on appeal. *Id.* Here, Filmar did not request the trial court to make findings of fact. Accordingly, the dispositive issue before us is the sufficiency of the evidence to support a determination that personal jurisdiction did not exist.

When we apply the factors articulated in our case law for determining whether the necessary minimum contacts exist to the facts presented here, we conclude they do not. First, the only contact demonstrated by Filmar between Stewart and Stewart & Smith and North Carolina is the mailing of a single letter from Alabama to Pinnacle in North Carolina written by Stewart on Stewart & Smith letterhead on behalf of their client Martin. In addition, North Carolina's interest in adjudicating this matter is insignificant. Plaintiff Filmar is not a North Carolina corporation. Defendants Stewart and Stewart & Smith are not residents of North Carolina, though defendant Martin

**FILMAR RACING, INC. v. STEWART**

[141 N.C. App. 668 (2001)]

does reside in North Carolina. Moreover, litigation giving rise to this cause of action has been pending in a state court in Tennessee at all relevant times. Finally, permitting this lawsuit to proceed in North Carolina would not be convenient for the parties, nor would it be in the "interests of and fairness to" Stewart and Stewart & Smith.

This conclusion is consistent with *Tutterrow v. Leach*, 107 N.C. App. 703, 421 S.E.2d 816 (1992). In *Tutterrow*, we reversed the trial court's denial of a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction over a non-resident defendant. In *Tutterow*, the defendant, a Rhode Island resident, and the plaintiff, a North Carolina resident, entered into an oral contract over the telephone. This oral contract was later memorialized by letter. Thus, the only contacts between the defendant and the state of North Carolina were telephone conversations and a "handful of letters." *Id.* at 709, 421 S.E.2d at 820. All acts to be performed under the contract were to occur outside North Carolina. Moreover, any services actually rendered by the defendant were discharged outside North Carolina. We held that these contacts were insufficient to satisfy due process. *Id.*

Here, as in *Tutterrow*, to exercise personal jurisdiction over these non-residents would violate due process of law. By the single act of mailing a letter from Alabama to North Carolina on behalf of their client, Stewart and Stewart & Smith did not purposefully avail themselves of the privilege of conducting activities within North Carolina. As such, they did not invoke the benefits and protections of our laws. Moreover, by this one act, Stewart and Stewart & Smith could not have reasonably anticipated being haled into court in this state. Although we are cognizant of the liberal trend toward exercising personal jurisdiction over non-resident defendants, the minimum contacts which are "absolutely necessary" between the defendant and our state for North Carolina to invoke jurisdiction are missing here. *Tutterrow*, 107 N.C. App. at 708, 421 S.E.2d at 819. Accordingly, this assignment of error fails.

**[2]** Filmar next argues that the trial court erred in dismissing the claims against all defendants pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. Filmar contends that because the complaint stated a claim for tortious interference with a contract, the motion to dismiss under Rule 12(b)(6) should have been denied. We disagree.

Under Rule 12(b)(6) of the Rules of Civil Procedure, a cause of action should be dismissed if it fails "to state a claim upon which

relief can be granted." G.S. § 1A-1, Rule 12(b)(6) (1999). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 345, 511 S.E.2d 309, 312 (1999); *Derwort v. Polk County*, 129 N.C. App. 789, 791, 501 S.E.2d 379, 380-81 (1998); *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). When ruling on a Rule 12(b)(6) motion, the trial court must accept as true the allegations contained in the complaint. *Hudson-Cole*, 132 N.C. App. at 345, 511 S.E.2d at 312. "[W]hen the complaint on its face reveals the absence of fact sufficient to make a good claim," dismissal of the claim pursuant to Rule 12(b)(6) is properly granted. *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986); *Hudson-Cole*, 132 N.C. App. at 345-46, 511 S.E.2d at 312; *Harris*, 85 N.C. App. at 670-71, 355 S.E.2d at 840-41.

Here, Filmar's complaint alleges that Stewart, Stewart & Smith and Martin tortiously interfered with their contractual relationship with Pinnacle. The essential elements of tortious interference with a contract are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

*Embree Construction Group v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (quoting *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)); *Lexington Homes, Inc. v. W.E. Tyson Builders, Inc.*, 75 N.C. App. 404, 410-11, 331 S.E.2d 318, 321 (1985). "The interference is 'without justification' if the defendants' motives for procuring termination of the employment contract were 'not reasonably related to the protection of a legitimate business interest' of the defendant." *Privette v. University of North Carolina*, 96 N.C. App. 124, 134, 385 S.E.2d 185, 190 (1989) (quoting *Smith v. Ford Motor Co.*, 289 N.C. 71, 94, 221 S.E.2d 282, 292 (1976)). Accordingly, we have held that the complaint must admit of no motive for interference other than malice. *Id.* at 134-35, 385 S.E.2d at 191; *Sides v. Duke University*, 74 N.C. App. 331, 346, 328 S.E.2d 818, 829 (1985), *rev'd on other grounds, Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 493 S.E.2d 420 (1997).

Filmar's complaint alleges that Stewart, Stewart & Smith and Martin "lacked justification" for their acts in mailing the 25 January

1999 letter to Pinnacle. However, the complaint also describes the litigation pending in Tennessee. Thus, on the face of the complaint Filmar alleges that defendants have a legitimate business interest both in Filmar's contract with Pinnacle, as well as for mailing the 25 January letter. Because the face of the complaint admits of "motive for interference other than malice," the trial court did not err in granting the Rule 12(b)(6) motion to dismiss.

Finally, Filmar argues on appeal that the trial court erred in granting Stewart and Stewart & Smith's motion to dismiss pursuant to Rules 12(b)(4) and (5). We conclude that Filmar complied with the provisions of these rules, and therefore the trial court improperly granted Stewart and Stewart & Smith's motion to dismiss under Rules 12(b)(4) and (5). However, such error was harmless as the trial court properly granted the motion to dismiss pursuant to Rules 12(b)(2) and (6). *Hajmm Co. v. House of Raeford Farms*, 328 N.C. 578, 589, 403 S.E.2d 483, 490 (1991).

For the foregoing reasons, the order and judgment of dismissal of 20 September 1999 is affirmed.

Affirmed.

Judges WALKER and HUNTER concur.